**Mark Ahlemeyer, OSB No. 095997**
**Assistant Federal Public Defender**
Email: mark_ahlemeyer@fd.org
101 SW Main Street, Suite 1700
Portland, OR  97204
Tel: (503) 326-2123
Fax: (503) 326-5524

**Attorney for Defendant**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>      **Plaintiff,**<br><br>  v.<br><br>**TYRONE LAMONT ALLEN,**<br><br>      **Defendant.** | Case No. 3:18-cr-00072-HZ<br><br>**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS** |

  The government characterizes Mr. Allen's motion as seeking a "windfall" because "investigators were able to take steps to counteract his efforts to disguise his identity." Resp. at 11. First, Mr. Allen does not seek a windfall; he seeks to enforce the constitutional right to due process which guarantees fundamental fairness in criminal proceedings. Second, the government's response confirms the exact problem in this case: (1) with minimal probative evidence, investigators concluded that Mr. Allen was the bank robber; (2) they were aware that the bank robber appeared not to have facial tattoos, so they hypothesized that Mr. Allen must have worn make-up; (3) they digitally altered Mr. Allen's photograph to conform his appearance to their

Page 1    REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS

theory of the case; and (4) they used that false image to secure at least two positive identifications from the four bank teller victims.[1] This rigging of the photo array process was unnecessary, created unreliable evidence, and denied Mr. Allen the fundamental fairness a criminal defendant is entitled to. Accordingly, any positive identification evidence against Mr. Allen should be suppressed either under the due process clause or pursuant to this Court's inherent supervisory powers.[2]

The government does not point to any exigency or emergency that required the identification procedures used in this case. Instead, the government claims that it was necessary for investigators to alter Mr. Allen's photograph to avoid having his "prominent and distinctive facial tattoos" cause him to be "singled" out in the line-up. Resp. at 12. This argument might have passing appeal in a case where a witness noticed and reported a "prominent and distinctive" feature, but that did not happen here. As the government concedes, no victim teller reported that the robber had facial tattoos. Thus, it strains credulity to argue that there was a danger that Mr. Allen would have been singled out because he had a prominent facial feature that *did not* match the witnesses' reports or the objective video evidence.

In any event, even in cases where witnesses *do* report a prominent facial feature, courts have not suppressed identification evidence when a suspect's picture is the only one in a photo array with that feature. For example, in *United States v. Ryono*, 867 F.2d 614 (9th Cir. 1989) (unpublished), a bank teller reported that the robber had "a scar on his right cheek," which the

---

[1] Despite the case agent's sworn declaration otherwise (CR 1 at 15), the government now alleges that a third teller also identified Mr. Allen. This new claim raises questions about evidence handling procedures and chain of custody issues. With respect to the current motion, this new allegation only underscores the lack of reliability of the identification procedures used in this case.

[2] The government's Response does not address the defense argument regarding suppression under the Court's supervisory power. Accordingly, this Reply does not address that issue further.

defendant did. *Id.* at *3. Additionally, the defendant was the only individual in the photo array that had such a scar on his right cheek. Nonetheless, both the district court and the Ninth Circuit held that the array was not impermissibly suggestive. *Id.* The Ninth Circuit noted that "[d]istinctive scars or birth marks are often the type of characteristics which make it difficult for law enforcement officers to find similar photographs to place in a photospread." *Id.* In such situations, it may be necessary for law enforcement to include a photo of a suspect that does stand out compared to the others, simply because matching filler photos cannot be found.[3] Given that courts have not suppressed identification evidence where a suspect's photo is the only one with a *reported* distinctive feature, the claim that it was legally "necessary" for the government to digitally remove an *unreported* distinctive feature is simply unsupported by precedent.

The government does not take the position, however, that it could not find appropriate matching filler photos. Instead, it claims that doing so would have "increased the likelihood of a misidentification." Resp. at 13. This is so, the government says, because using a photo array where all individuals had facial tattoos "would have been inconsistent with the descriptions provided by the victim tellers." *Id.* But this is circular reasoning and only begs the question. It is true that the bank tellers did not report seeing facial tattoos on the robber, so a photo array including multiple suspects with facial tattoos may have increased the likelihood that a teller would not make any identification. That is different than a "misidentification," which presumes Mr. Allen's guilt and assumes the accuracy of the government's theory that he wore a disguise. In reality, the government's argument belies the real goal of investigators—they had concluded that Mr. Allen

---

[3] Alternatively, if investigators are truly concerned about having a suspect's distinctive features stand out in a photo array, they are free to digitally alter the filler photos to more closely mimic the suspect's features.

Page 3    REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS

was guilty, they came up with a theory of how he could have changed his appearance to match victim reports and the objective video, and they created a photo array that maximized the likelihood of Mr. Allen being selected by making his picture consistent with what the robber looked like. This was an unnecessarily suggestive procedure that resulted in an inherently unreliable identification.

The government does not directly address Mr. Allen's argument that sanctioning the material alteration of a suspect's photo is a slippery slope without a limiting principle. The government does claim that the "investigators did not alter any of defendant's immutable facial features" when they digitally erased his elaborate facial tattoos. Resp. at 15. This statement appears to be the closest to a limiting principle offered by the government. However, it is not at all clear what the government means by "immutable facial features" or why facial tattoos do not fall under that category. While the government claims that make-up can cover such tattoos, it ignores the vast array of other cosmetic products that can change people's appearances. A simple internet search reveals that easily available products can be used to change the appearance of someone's nose, jaw, eye color, or pretty much any facial feature.[4] Under the approach the government asks this Court to adopt, nothing prevents investigators from changing a suspects "immutable" facial features because, in reality, any feature can be disguised through cosmetics. Allowing the government to present identification evidence at trial that is based on doctored source images does not enhance the truth-seeking function of a jury and only risks increasing the likelihood of

---

[4] *See, e.g.*, https://www.cosmopolitan.com/style-beauty/beauty/a25058103/instagram-fake-wax-nose-job-videos/

convicting innocent defendants. The Court should not allow the government to begin down this dangerous road.

For the reasons set forth in the initial Defense Memorandum and those stated above, Mr. Allen respectfully requests the Court suppress any positive identification evidence against him that is based on, or related to, the use of a fake picture of him in the photo line-up.

RESPECTFULLY submitted this 26th day of July, 2019.

                                                             */s/ Mark Ahlemeyer*
                                                             Mark Ahlemeyer
                                                             Assistant Federal Public Defender